Argued and submitted September 30, 2003, affirmed February 18, 2004

STATE OF OREGON,
*Respondent,*

*v.*

DANIEL THOMAS GILL,
*Appellant.*

P349289, P349290, P414403, R414404;
A115064 (Control), A115065, A115066, A115067
(Cases Consolidated)

84 P3d 825

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Leeson, Judge pro tempore.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals convictions for driving under the influence of intoxicants (DUII), driving while suspended (DWS), giving false information to a police officer, and attempted felony DWS. ORS 161.405; ORS 807.620; ORS 811.182; ORS 813.010. He assigns as error the trial court's denial of his motion to dismiss on statutory and constitutional speedy trial grounds. We affirm.

The material facts are undisputed. On September 28, 1991, defendant was cited for DUII and DWS in Multnomah County. On October 22, 1991, defendant failed to appear, and a bench warrant was issued for his arrest on November 4, 1991. On March 12, 1992, defendant was arrested in Multnomah County pursuant to the outstanding warrant and was cited for giving false information to a police officer, felony DWS, and failure to present a driver's license.[1] Defendant was released on his own recognizance on March 13, 1992, and on the same day failed to appear on the September 1991 offenses. A bench warrant was again issued for his arrest on March 17, 1992. On March 31, 1992, defendant failed to appear on the March 12, 1992, charges, and on April 2, 1992, another bench warrant was issued. On May 28, 1992, defendant was arrested pursuant to the outstanding warrants, released on his own recognizance, and again failed to appear on May 29, 1992. On June 3, 1992, bench warrants were again issued. Defendant subsequently moved to Virginia in July 1992. He was not arrested again on the above Multnomah County charges until March 2001. During that period, defendant never contacted the court about the status of the outstanding bench warrants.

Before leaving Oregon in 1992, defendant assisted the Federal Bureau of Investigation (FBI) with the apprehension of a bank robber. Defendant told the FBI agents with whom he worked on the bank robbery case that charges were pending against him in Multnomah County, and the agents indicated that they would attempt to get the charges

---

[1] As a result of the March 12 incident, defendant was ultimately convicted of giving false information to a police officer and attempted felony DWS, and the charge of failure to present a driver's license was dropped.

dropped. The FBI agents were unsuccessful in persuading the district attorney's office to drop the charges, and the charges remained pending. The trial court found that defendant "left here knowing that he had warrants outstanding."

While defendant was in Virginia, he was involved in two severe accidents that left him partially paralyzed and confined to a wheelchair. Defendant underwent extensive hospitalizations, and he asserts that he has an impaired memory due to a concussion and the multiple prescription medications that he takes as a result of his physical condition.

Defendant returned to Oregon in 1995. He was cited and released on a theft charge on July 25, 1995, which was dismissed in August 1995. Defendant lived in Portland for a short period and then moved to Vancouver, Washington. He moved to Medford sometime in late 1996 or early 1997. Thereafter, he had multiple interactions with the police in Jackson County. On January 3, 1997, defendant was indicted in Jackson County for tampering with drug records.[2] He was convicted of a felony drug tampering offense on March 4, 1997, and placed on 18 months' probation. On April 21, 1997, defendant was indicted for criminal mischief in the second degree. He was convicted the next day and placed on probation with an order to perform community service. Defendant was charged with other traffic infractions in March 1998. He was convicted of DUII on May 5, 1998, and was placed on probation. In January 1999, defendant failed to appear for a victim impact program and received a jail sentence that was converted to community service, which involved completing court observations. Defendant was later cited for other traffic infractions in Clackamas County in February 2000.[3]

There is no indication that, during his interactions with the criminal justice system in Jackson County and Clackamas County, defendant was ever confronted about the outstanding Multnomah County warrants. Throughout his interactions with the criminal justice system, defendant used

---

[2] Defendant failed to appear on those charges on January 27, 1997, and February 4, 1997, and bench warrants were issued.

[3] Defendant failed to appear twice on the Clackamas County charges. Bench warrants were issued and recalled. The case was reactivated in March 2001.

his real name. However, he apparently moved several times and listed different addresses. The trial court found that the Jackson County police failed to check for defendant's outstanding warrants in Multnomah County.

■      Before trial, defendant moved to dismiss the indictments on statutory and constitutional speedy trial grounds. After the trial court denied defendant's motion, defendant waived his right to a jury trial, was tried by the court on stipulated facts, and was found guilty of the above-mentioned offenses. On appeal, defendant assigns error to the trial court's refusal to dismiss the indictments under ORS 135.747, Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. Under each provision, the issue of whether a defendant was brought to trial within a reasonable time is a question of law. *State v. Rohlfing*, 155 Or App 127, 129, 963 P2d 87 (1998).

■      We begin with the statutory issue.[4] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In order to determine whether there was a violation under the statute warranting dismissal, we first consider the extent to which "defendant caused or consented to the delay." *State v. Peterson*, 183 Or App 571, 576-77, 53 P3d 455 (2002) (internal quotation marks omitted). If there is some delay to which defendant did not consent, we then determine whether the

---

[4] We may address the constitutional analysis first where a constitutional violation would result in more complete relief (dismissal with prejudice) than a statutory violation (dismissal without prejudice). *See, e.g., State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000); *State v. Harman*, 179 Or App 611, 614, 69 P3d 779 (2002); *State v. Hilton*, 187 Or App 666, 671, 69 P3d 779 (2003). Pursuant to ORS 135.753, dismissal under ORS 135.747 bars reprosecution only for Class B and C misdemeanors. DUII (ORS 813.010), giving false information to a police officer (ORS 807.620), and attempted felony DWS (ORS 161.405 and ORS 811.182) were Class A misdemeanors at the time of the events giving rise to these charges. DWS (ORS 811.182) was a Class C felony. However, under ORS 131.125, the statute of limitations is two years for misdemeanors and three years for felonies. We therefore elect to consider the statutory issue before we address the constitutional issues.

lapse of time between the indictments and trial was reasonable under the circumstances. *Id.* at 577.

In *State v. Kirsch*, 162 Or App 392, 397, 987 P2d 556 (1999), we held that consent to a delay of trial under ORS 135.747 "does not require express consent and that defendant's failure to appear and his subsequent inaction constituted consent to the delay at issue * * *." Implicit consent may be found where a defendant demonstrates "that he [does] not want to have his trial scheduled within the regular course of the justice system but [consents] to have his case languish in legal limbo." *Id.* (internal citations and quotation marks omitted). Implied consent continues until the point at which it is revoked. *See id.* (holding that the defendant's failure to appear and subsequent inaction following that failure to appear constituted implied consent to the entire period of delay regardless of the defendant's other multiple interactions with police during his failure-to-appear status); *see also Peterson*, 183 Or App at 574-77 (finding that the defendant impliedly consented to the period during his failure-to-appear status, which lasted until the defendant again contacted the court by filing a motion to waive his appearance and entering a plea of not guilty).

The effect of defendant's implicit consent to the delay in this case means that there was not an "unreasonable delay" within the meaning of ORS 135.747. Here, the period of delay is due in large part to defendant's failures to appear, his absconding from Oregon, and his failure to provide information to the court about his whereabouts. For instance, the delay from the initial 1991 and 1992 charges until defendant's return to Oregon in 1995 is attributable entirely to defendant. Defendant could not reasonably rely on the FBI's attempt to intercede on his behalf without ascertaining whether that effort had been successful. The remaining period of time involves defendant's return to Oregon in 1995 until his arrest in March 2001 and the import of defendant's contacts with law enforcement agencies and courts during that period of time, which we discuss in more detail in our constitutional analysis that follows. We conclude here that, consistent with *Kirsch*, there is no statutory speedy trial violation despite defendant's interactions with police during the delay.

We turn to defendant's arguments under the Oregon and United States constitutions. Article I, section 10, of the Oregon Constitution provides that "justice shall be administered * * * without delay." An analysis under Article I, section 10, requires consideration of three factors: (1) the length of the delay, (2) the reason for the delay, and (3) the resulting prejudice to the accused. *Harberts*, 331 Or at 84; *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987). The threshold consideration, the length of the delay, can be dispositive if the delay itself is so long "that the thought of ordering [a] defendant to trial shocks the imagination and the conscience, or if the delay is caused purposely to hamper the defense." *Harberts*, 331 Or at 85 (citations and internal quotation marks omitted). Neither of those circumstances exist here. Significantly, there was no pretrial incarceration. *See State v. Moylett*, 123 Or App 600, 606, 860 P2d 886 (1993), *rev den*, 319 Or 150 (1994) (denying dismissal on constitutional speedy trial grounds despite lengthy pretrial appeal and potential anxiety attributable to pretrial delay because, *inter alia*, the "[d]efendant was never incarcerated, and was not prejudiced by the delay in his ability to defend the case"). There is no evidence that the state caused the delay purposefully to hamper the defense, and the delay is not so long that it shocks the imagination and the conscience. For example, in *Kirsch* we held that an eight-year delay during which the defendant was aware of a pending DUII charge, initially failed to appear, and subsequently remained unavailable for trial was not so excessive that it shocked the conscience. The ten-year delay in this case is similar to the eight-year delay in *Kirsch*, which we held not to be so excessive that it shocked the conscience.

Here, the length of the delay, approximately 10 years, triggers further inquiry. We turn then to the reasons for the delay.

We have previously recited the facts about the reasons for the delay. In that regard, our decision in *Kirsch* again informs our analysis. In *Kirsch*, we held that neither a constitutional nor a statutory speedy trial violation had occurred after an eight-year delay where the defendant failed to appear on a DUII charge. The defendant in *Kirsch* was stopped by police eight times during the period of delay after

his failure to appear but was never served with the outstanding bench warrant. We observed that, although

> "the delay was due in part to defendant's failure to appear and his subsequent failure to provide the court with any information regarding his whereabouts[,] [t]he delay was also attributable in part to the state's negligence in not arresting defendant on the outstanding bench warrant on the numerous occasions that he was stopped for traffic offenses."

*Id.* at 399. As were the facts in *Kirsch*, defendant in this case had multiple interactions with the police during the period of delay, and the outstanding warrant was never executed. Like in *Kirsch*, the police may well have been negligent in not arresting him on those occasions. However, as we said in *Kirsch*, "that does not preclude the conclusion that, by his conduct, defendant acquiesced in the delay. It was defendant who did not appear at the time set for trial and it was his choice not to contact the court following that failure." *Id.* at 397. *See also id.* at 399 (discussing reasons for delay under the constitutional analysis); *Barker v. Wingo*, 407 US 514, 536, 92 S Ct 2182, 33 L Ed 2d 101 (1972) ("barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial"). Consequently, the reasons for delay in this case do not weigh heavily against the state.

■ ■ The next factor requires us to determine whether defendant has established actual prejudice or the reasonable possibility of prejudice. As the court noted in *Harberts*, "prejudice can be of three kinds: the damage arising from lengthy pretrial incarceration, the anxiety and public suspicion resulting from public accusation of a crime, and the hampering of the ability to defend at trial." *Harberts*, 331 Or at 93 (citing *State v. Ivory*, 278 Or 499, 507-08, 564 P2d 1039 (1977)). Defendant does not claim that he experienced pretrial incarceration or that he suffered anxiety and concern with regard to the charges, but he does assert that the delay impaired his defense. In determining whether the delay caused prejudice to the defense, the proper inquiry is

whether "the delay caused a 'reasonable possibility of prejudice' to the ability to prepare a defense." *Id.* at 86 (quoting *Ivory*, 278 Or at 508). Defendant asserts that he experienced prejudice in the form of impaired memory due to the delay. However, he did not provide to the trial court any medical record as to the effect of his injuries on his memory, and the court found defendant not to be a credible witness. Accordingly, we agree with the trial court's implicit finding that defendant has not sufficiently demonstrated that he suffered prejudice from the delay. For all of the above reasons, we conclude that defendant has not demonstrated a violation of his right to a speedy trial under Article I, section 10.

■ A speedy trial analysis under the Sixth Amendment to the United States Constitution includes much of the same analysis as is made under Article I, section 10, except that we balance the factors instead of weighing them. *Mende*, 304 Or at 22, 24. Also, we consider "an additional factor: whether the defendant raised a speedy trial claim below." *Peterson*, 183 Or App at 576 (citing *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972); *State v. Dykast*, 300 Or 368, 712 P2d 79 (1985)). Here, defendant first made a speedy trial argument when he filed his motion to dismiss. Nonetheless, defendant never protested about the delay between 1992 and 2001. Therefore, our consideration under Sixth Amendment speedy trial analysis does not yield a different outcome.

Affirmed.