Argued and submitted September 29, 2008, affirmed April 8, petition for review denied July 9, 2009 (346 Or 364)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL ANGLIN,
*Defendant-Appellant.*

Multnomah County Circuit Court
971049656; A134849

206 P3d 193

Travis S. Eiva, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

### BREWER, C. J.

In 2007, defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010, and reckless driving, ORS 811.140; he had committed those crimes 10 years earlier, in 1997. On appeal, he asserts that the trial court erred in denying his motion to dismiss the case on statute of limitations and statutory speedy trial grounds. For the reasons explained below, we affirm.

After leaving a bar in the early morning hours of October 5, 1997, defendant and his friend sped north on Interstate 5 in the friend's truck toward the interstate toll bridge; defendant was driving. Although the bridge was up and traffic was stopped, defendant approached the bridge at 70 miles per hour. Too late, defendant attempted to bring the truck to a stop. He collided with a stopped vehicle, which then struck other vehicles in front of it. When police officers arrived, they found several open cans of beer scattered around the wrecked truck. Defendant told one officer, "I was too intoxicated to drive." Defendant was transported to the hospital, where an officer issued him citations for DUII and reckless driving.

The citations that were issued to defendant required him to appear in court on October 22, 1997. On that day, the district attorney filed an information charging defendant with the same offenses that he had already been cited for—DUII and reckless driving. The information listed the citation numbers of the citations that the police officer had issued to defendant. In addition, the information added a charge of recklessly endangering another person, ORS 163.195, based on the same facts as the other charged offenses. That charge, however, was ultimately dismissed and is not at issue in this appeal. The day before the information was filed, the district attorney had stamped the citations with the notation, "PROSECUTION DECLINED."

Defendant never appeared for the October 22 arraignment, and the court issued an arrest warrant. That arrest warrant, in fact, was never executed. Rather, defendant went on with his life, eventually pursuing a career as a security officer. In October 2006, a police officer he was in contact with regarding an incident he had responded to told

him that there was a warrant outstanding for his arrest. When he completed his shift that day, defendant went to a police station and turned himself in.

Pretrial, defendant moved to dismiss the information on the grounds that the prosecution was not commenced within the statutory period of limitations and that he was denied his right to a speedy trial. The trial court denied the motion, defendant waived a jury, and the trial court convicted him of DUII and reckless driving.

■      On appeal, defendant reprises his trial-level arguments. We begin with his argument that the criminal action was not commenced within two years, as required by ORS 131.105 and ORS 131.125(6)(b). "A prosecution is commenced when a warrant or other process is issued, provided that the warrant or other process is executed without unreasonable delay." ORS 131.135.[1] The purpose of criminal statutes of limitation is to provide notice to a defendant of a pending prosecution. *State v. Hinkle*, 225 Or App 347, 351, 201 P3d 250 (2009). Defendant does not dispute that the district attorney's information was filed within the period of limitations, but argues that, because the arrest warrant was not executed "without unreasonable delay," the action was not commenced within the time required by the statute of limitations. The state responds that the reference in ORS 131.135 to "other process" includes the criminal citation that was issued in this case, that the citation was executed the day of the traffic accident, and that the state's failure to execute the later-issued arrest warrant is irrelevant. Defendant replies that the district attorney terminated the prosecution on the citations when he stamped "PROSECUTION DECLINED" on them and filed the information. It is the citations, he asserts, that are irrelevant.

The pivotal issue is whether the filing of the information commenced a new prosecution. If it did, the nearly nine-year delay before defendant turned himself in and the arrest warrant was effectively executed would appear to be unreasonable. *See, e.g., State v. Huskey*, 171 Or App 550, 17

---

[1] We refer in this opinion to the 1997 versions of the statutes in ORS chapters 131 and 133. Although some of the referenced statutes have been amended, our conclusion would be the same under the current versions.

P3d 541 (2000) (warrant executed nearly three years after DUII incident; court held that the delay was unreasonable).[2] In contrast, if the citations commenced the prosecution that ultimately led to defendant's convictions and if they constitute "other process," the prosecution was commenced the day of the traffic accident, and the trial court correctly rejected defendant's statute-of-limitations argument.

■     As an initial matter, because they were "other process," the citations issued the day of the traffic accident were sufficient to commence a prosecution. *State v. Sisneros*, 84 Or App 306, 308, 734 P2d 355, *rev den*, 303 Or 455 (1987). Thus, because the citations were executed within the two-year period of limitations, a prosecution was timely commenced. Defendant nonetheless argues that that prosecution was terminated by the district attorney's later actions in declining prosecution and filing an information. According to defendant, no process was ever executed, as required by ORS 131.135, in the criminal action that led to his conviction. After considering the 1997 statutory provisions bearing on the issuance of citations and the record in this case—in light of the purpose of the provision imposing a limitations period—we reject that argument.

The citations issued in this case were authorized by ORS 133.055(1), which provided, "A peace officer in lieu of taking the person into custody may issue and serve a citation to the person to appear at the court of the magistrate before whom the person would be taken pursuant to ORS 133.450." The first two subsections of ORS 133.060 governed the procedure to be followed after a citation was issued:

"(1)   The person cited shall appear before a magistrate of the county in which the person was cited at the time, date and court specified in the citation, which shall not be later than 30 days after the date the citation was issued.

"(2)   If the cited person fails to appear at the time, date and court specified in the citation, *and a complaint or information is filed*, the magistrate shall issue a warrant of arrest, upon application for its issuance, upon the person's failure to appear."

---

[2] The state does not attempt to defend that delay. Rather, as noted, it argues only that the process was executed the day the crime was committed.

(Emphasis added.) That provision demonstrates the legislature's assumption that a complaint or information would be issued in the same case (or to use the statutory language, the same "criminal action") as the citation. That is, it shows that the legislature did not anticipate that a later-filed information would terminate one prosecution and commence another.

Two other provisions support that conclusion. ORS 133.065(2)(g) required the following notice to be included in a citation:

"READ CAREFULLY

"This citation is not a complaint or an information. One may be filed and you will be provided a copy thereof at the time of your first appearance. You MUST appear in court at the time set in the citation. IF YOU FAIL TO APPEAR AND A COMPLAINT OR INFORMATION HAS BEEN FILED, THE COURT WILL IMMEDIATELY ISSUE A WARRANT FOR YOUR ARREST."

Similarly, ORS 133.075 provided:

"If any person knowingly fails to appear before a court pursuant to a citation issued and served under authority of ORS 133.045 to 133.080, 133.110 and 156.050 *and a complaint or information is filed,* the person commits the crime of failure to appear on a citation which is a Class A misdemeanor."

(Emphasis added.) Moreover, in this case, the information included references to the citation numbers, again indicating that the information was intended by the district attorney to be part of the prosecution that was commenced by execution of the citations. In short, the statutory scheme governing criminal citations and the record in this case—including the information's specific reference to the earlier-issued citations—demonstrate that defendant was prosecuted only once and that the prosecution began with execution of the criminal citations. Moreover, that conclusion is consistent with the notice purpose of criminal statutes of limitations: Defendant was aware that the state was proceeding criminally against him when he was handed the citations the day of the accident.

In support of his contrary argument, defendant cites a number of cases holding that the dismissal of one accusatory instrument and the filing of another ends the first prosecution and commences a new one. Yet each of those cases involved superseding indictments, rather than informations filed in a case initiated by a criminal citation; moreover, each is inapposite for additional reasons. Thus, for example, in *State v. Nichols*, 236 Or 521, 388 P2d 739 (1964), trial had already begun when the court dismissed the indictment and gave the state leave to resubmit the matter to the grand jury. The second indictment charged a crime greater than had been charged in the first indictment, and the defendant argued that such an indictment was void. The Supreme Court disagreed, explaining:

> "[W]here an indictment is dismissed and the matter is resubmitted to the grand jury the prosecution is in the same posture in which it would have been if the defendant had never been indicted. * * * The grand jury is free, therefore, within the limitations of the statutes setting forth its duties, to indict for any crime of which it believes the accused to be guilty."

*Id.* at 527. *Nichols* addressed the power of a grand jury and had nothing to do with statutes of limitation. It also involved an indictment that the trial court had dismissed for failure to state a crime.

Similarly, in *State v. Silver*, 239 Or 459, 398 P2d 178 (1965), the court held that a second indictment—filed after the statute of limitations had expired—did not relate back to the previously dismissed indictment that had been timely filed. In that case, however, the court analyzed the issue by construing the statutes governing grand juries and indictments. Finally, defendant cites *Abbott v. Baldwin*, 178 Or App 289, 36 P3d 516 (2001), *rev den*, 334 Or 75, *cert den*, 537 US 901 (2002). Although *Abbott* presented a statute of limitations issue, unlike this case, it involved a superseding indictment—with a different case number—that was filed after the court dismissed an earlier indictment.

In sum, we do not find the analyses in the cases involving indictments particularly useful in the context of criminal citations and subsequently filed district attorney

informations. Rather, considering the statutory scheme governing the use of criminal citations and the record in this case, we conclude that the prosecution in this case was timely commenced when defendant was given the criminal citations in the hospital on the day of the offenses. Accordingly, we turn to defendant's speedy trial claim.

■■■ Defendant argues, in that alternative, that the nearly nine-year delay between when the prosecution was commenced and when he was brought to trial was unreasonable under ORS 135.747, which provides that, "[i]f a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed." In determining whether a delay is "reasonable" under ORS 135.747, we consider both the length of delay and the reasons for it. We first determine the total amount of delay and subtract from that total "any periods of delay that the defendant requested or consented to." *State v. Garcia/Jackson*, 207 Or App 438, 444, 142 P3d 501 (2006).[3] If the remaining delay is longer than "ordinarily expected" to bring a defendant to trial, we must ascertain whether the length of that delay was unreasonable by examining "all the attendant circumstances." *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005).

In his brief, defendant acknowledges that "failing to appear at a required court proceeding, for which notice was provided, can create implicit consent to a subsequent delay." The state argues that defendant in this case did consent to the delay by failing to appear, as required by the criminal citations. Defendant asserts, in reply to that anticipated argument, that he failed to appear in the case that was initiated by the criminal citations and, because that was a different prosecution than the one that ultimately led to his conviction, his failure to appear cannot justify the delay in the separate prosecution initiated by the information. In other

---

[3] In *Jackson/Garcia*, we synthesized the analysis set out by the Supreme Court in a trilogy of speedy trial cases: *State v. Adams*, 339 Or 104, 116 P3d 898 (2005); *State v. Davids*, 339 Or 96, 116 P3d 894 (2005); and *State v. Johnson*, 339 Or 69, 116 P3d 879 (2005).

words, defendant's argument rests on the same premise on which his statute-of-limitations argument rests—that is, that filing the information terminated one prosecution and commenced another. We already have rejected that premise. Thus, the question is whether defendant consented to a delay in the single prosecution that commenced with issuance of the citations and that led to his conviction.

In a number of cases, we have held that a defendant's failure to make a required court appearance constituted consent to delay for purposes of ORS 135.747. In *State v. Hickerson*, 153 Or App 284, 956 P2d 1050 (1998), for example, the defendant was arrested for DUII and failed to appear at his arraignment. He again failed to appear at a show cause hearing regarding termination of a diversion program. *Id.* at 286. In considering the 19-month delay that resulted from the latter failure to appear, this court said that the "defendant's failure to appear and subsequent conduct demonstrate that he consented not to be brought to trial during that 19-month period." *Id.* at 287. *State v. Kirsch*, 162 Or App 392, 987 P2d 556 (1999), also involved a failure to appear in a DUII prosecution. In that case, the defendant's failure to appear resulted in a nine-year delay between the date he was cited and the date he was arraigned. This court agreed with the trial court that "ORS 135.747 does not require express consent and that defendant's failure to appear and his subsequent inaction constituted consent to the delay at issue here." *Id.* at 397.

Similarly, in *State v. Gill*, 192 Or App 164, 84 P3d 825, *rev den*, 337 Or 282 (2004), another DUII case, the defendant failed to appear on several occasions, he moved a number of times (including out of state), and he had a number of interactions with law enforcement officials in unrelated matters while the DUII arrest warrant was outstanding. This court noted that there was "no indication that, during his interactions with the criminal justice system in Jackson County and Clackamas County, defendant was ever confronted about the outstanding [DUII] * * * warrants." *Id.* at 167. This court concluded that the defendant had implicitly consented to the delay in his case. We explained that, "consistent with *Kirsch*, there is no statutory speedy trial violation despite defendant's interactions with police during the

delay." *Id*. at 169; *see also State v. Peterson*, 183 Or App 571, 53 P3d 455 (2002) (defendant in DUII prosecution responsible for delay during period that he was on failure-to-appear status).

In sum, the delay in bringing defendant to trial was due to his failure to appear in the sole prosecution initiated by the state. Because the district attorney's filing of an information did not commence a new prosecution, the cases cited above dispose of defendant's statutory speedy trial claim.

Affirmed.